Good morning, my name is Hector Montoya. I'm the attorney for the appellant, Mr. Gabriel Paez-Perez. There's three issues here that we have before the court, and I'd like to address the first issue regarding the jurisdictional issue that the government has so vigorously argued in this particular case, and I'd like to also reserve two minutes at the end of the hearing to address that. I think one of the problems with this particular argument by the government is that they are very effective in terms of citing all the federal case law, excuse me, code in this particular case that precludes Mr. Paez-Perez from attempting to argue his position regarding jurisdiction. However, I think one of the things that we must note in their briefs is the absence of any argument or any discussion with regards to our argument regarding the lawfulness of that deportation. If we look at the case law in this particular case, and we cited, I think, two different cases, excuse me, about three different cases, one being Calderón, Medina, a 1979 case, and Mendez, which was a 1977 case, where the lawfulness of the underlying deportation was brought into question. And in effect, what the courts found in these two cases, and it was both Ninth Circuit cases, was the underlying deportation was illegal, and therefore the individual had an opportunity to come back and argue whether, in fact, he could maintain their presence here in the United States. And that is what has effectively happened here in this particular case. Mr. Paez-Perez was illegally deported for several reasons, and one of them was for the simple reason that the Immigration Court violated its own regulation. By going back to the Calderón, Medina case, there was a CFR 242.16, which basically stated that the judge needed to advise the person of their right to present evidence, to defend their case, to bring forth, cross-examine the witnesses, and things of that nature, which are basic principles of our system of justice. However, that code has changed now, and the code that was effective back in 2000, when Mr. Paez-Perez was going through his deportation, was then numbered 240.48. It's the same code that existed back in the 1977, 78, 79 cases that said that if, in effect, the immigration judge violates their own regulations, then, in effect, you have an unlawful deportation. And that's what happened in this particular case. Mr. Paez-Perez was never allowed to present any evidence, testimonial or exhibits, before the court. He was categorically denied his ability to make any argument with regards to his 212c right. And as a result, I think if we go back and look at the record in this particular case, we'll find that there's an absence of total, well, there's absolutely no type of documentation from the judge or from the court that, in effect, we were allowed to present that type of evidence. And I would contend at this point in time, that is the illegality that occurred in this particular case. There's some case law that says, and I believe it's contained in both Caldo de Medina and in Mendez, is that if there's a benefit to the deportee, in this case Mr. Gabriel Paez-Perez, and the government, or in this case the immigration court, violated that benefit, then there should be some type of reprieve or some sort of remedy for Mr. Gabriel Paez-Perez. And that's what we're asking the court to do in this particular case. There was an illegality. It was an unlawful deportation. And as a result, he was then asked to leave this country. The government relies heavily on the fact that he's waived his right to deportate to appeal any of his case because of the fact that he decided to leave the country and, therefore, should not be allowed to bring these type of arguments before this court, much less any other court. We contend that Mr. Paez-Perez should not be made to suffer the consequences of the illegal deportation. In other words, here we have a situation where the government created an illegality, yet the government contends that he should remain in custody or apply for some habeas relief of some sort and remain in custody for a much longer period of time because of the illegality. I contend that's fundamentally unfair. And that would be too onerous of a burden on Mr. Paez-Perez to bear to spend an additional four years in incarceration in order to bring all his appealable rights before the Bureau of Immigration Appeals or the Ninth Circuit Court of Appeals. As the Court knows, Mr. Paez-Perez was deported in December of 2000, and we're now four years, almost three and a half years into this case, and we're barely up here in the Ninth Circuit at this point in time. So for those reasons, I would just ask the Court to review that scenario with regards to the government's position that they have not addressed that issue, and I feel that's one of the more important issues that we must address in order to resolve the following issues. I would also like to point out to the Court with regards to the time of his hearing back on December 13, 2000, we tried to inform the Court, the Immigration Court at that time, to present to a petition about the Entrada Partida case that was in effect at the time. This was before St. Cyr came into effect some time later. I think even under the Entrada Partida case law, Mr. Gabriel Paez was entitled to 212C relief. He had entered into his plea agreement in state court on March 6 of 1996. All the following Antiterrorism and Effective Death Penalty Act and the Illegal Immigration Reform Act didn't go into effect until after that point in time. So Mr. Paez-Perez had, without doubt, entered into his plea agreement prior to the effective dates of those two very substantial and important laws. Also, one of the things I think we need to look at in this particular case is that the underlying offense or the acts that led up to that plea agreement occurred way before the effect of these two laws. So not only do we have the plea agreement occurring before the effective date, but the underlying actions. And again, there's case law that we've cited in our appeal with regards to what the Court should look at in terms of the two scenarios to determine whether, in fact, we are eligible or continue to be eligible for 212C relief. Much like in the case of St. Cyr, Mr. Gabriel Paez-Perez was then given an order to show cause for a hearing almost four and a half years after these acts occurred or after the acceptance of the plea and then asked to be deported. This is exactly what happened in the St. Cyr case. They were asked to come back and look at the deportability of this individual, and as a result said in St. Cyr's case that he was still eligible for 212C, even though the order of deportation occurred after the effective dates of his two substantive laws. So for those reasons, we're asking the Court to not only look at Andrada Partida at the time that Mr. Gabriel Paez-Perez entered into his plea agreement, and it was in effect at the time of his deportation, but also look at the case of St. Cyr, which occurred approximately six months after the order of deportation. I think the combination of those two will show that Mr. Paez-Perez continues to be 212C eligible and does meet the jurisdictional requirements. Thank you. Your timing was impeccable. We'll hear now from the government. May it please the Court. My name is Ernesto Molina with the U.S. Department of Justice Office of Immigration and Litigation, and I represent the respondent, John Ashcroft, in this case. In this case, the Court addresses a criminal alien who seeks review of a motion to reopen which has been denied. However, the Court lacks jurisdiction over that because of Section 309C4G of the Illegal Immigration Reform and Immigrant Responsibility Act, which precludes this Court's jurisdiction for aliens convicted of certain offenses. Now, I guess I should begin by noting that it looks like the Court presently has two ships passing in the night before it. It has the petitioner who wants to urge his illegal departure arguments and his entitlement to 212C. And then it has the government, which is just saying, well, the Court lacks jurisdiction. But given a look at all of those issues, the Court still lacks jurisdiction, whether the prior departure was illegal or not, or whether or not Mr. Paez-Perez is eligible for 212C. So your position is that the petitioner has no possible avenues of relief or that he has to seek them through habeas? Well, the problem is he wouldn't get them through habeas, Your Honor, because he's not in the custody of the United States. Because he was deported. Because he's out of the United States. You know, there may be other ways that it could be done, but I don't want to encourage an illegal return to the United States. You know, it's conceivable under case law that if he were illegally returned, he could challenge it in the context of a criminal proceeding. But I would hesitate to do that because he abandoned his appeal to the board in this case. Therefore, he failed to exhaust his administrative remedies. And therefore, he wouldn't get that type of review in the criminal proceeding. What is your response to the argument that he didn't really abandon it, that it wasn't voluntary because the government had put him unlawfully in the situation where he had to make the choice between being retained for four years and getting here versus going home? I'm sorry. I didn't mean to cut you off, Your Honor. But that argument just can't hold water for this reason. What happened back then was the immigration judge allowed him to apply for 212C, but then when AEDPA came out, it looked – I'm sorry, I said AEDPA. That's the Anti-Terrorism and Effective Death Penalty Act, which I'll call AEDPA. It looked like this gentleman might not be eligible. So the immigration judge offered briefing. And Mr. Paez-Perez's attorney made all the arguments based on Magana-Pazano and Andrade Portillo that he was still eligible. The government argued he was not. Now, the immigration judge came out one way. But here's the circumstance we have. We have an alien whose attorney is, in theory, apparently making the right arguments, who then says, you know what, I've been in jail for four and a half years. I'm in honest custody now. I just want to go home to Mexico. And he abandons that type of relief. He gets the benefit of his bargain. He was returned to Mexico, and he's free in Mexico. And what effect, if any, then, is the fact that the immigration judge was wrong about the law? A wrong decision is not a denial of due process, Your Honor. The Supreme Court explained that in United States' ex-rel Tizzy v. Todd. What happened was perhaps the immigration judge was wrong, but there was a remedy to fix that, which was an appeal to the Board of Immigration Appeals. And, of course, St. Cyr was decided only six months later, so this gentleman had a decent chance at that point of still having his case alive and the possibility of obtaining relief. But he decided instead that he was going to abandon that. Now, a person is not improperly denied something that they intentionally abandon. With the effect, with the assistance of counsel, who is aware of the proper arguments to make, and yet still decides, with all of that, that they just want to go home. So going back to my original question, it sounds like there's, in your view, nothing he can do at all. It looks that way, Your Honor, because once he was, you know, had an attorney who knew the arguments to make and decided that he just wanted to go home anyway, he effectively abandoned everything. And because of that, there's nothing to remedy, and that's the way the court really does need to understand it, is that this person chose to leave the United States and leave all the possibilities he had before him. And the courts are not here to save that type of person from their own conscious, voluntary choices. Now, because of that, it still remains, and it's apparently undisputed, that Mr. Pius Press was convicted of an aggravated felony and was removable under 241A2A3, that that was also a controlled substance offense under 241A2B1, because his crime was drug trafficking. Therefore, this court's jurisdiction is limited under 309C4G of IRERA, and this court has said time and time again, outside those limited determinations of whether or not the person is an alien, whether they've been deported, and whether that ground is listed in 309C4G, there's not a lot for the court to do. And because of that, the illegal entry, whether or not there was an illegal departure, I should say, is irrelevant, and whether or not he was owed under 212C becomes irrelevant at this point. The court simply lacks jurisdiction. Now, I see that I still have four minutes left, but if there are no further questions, I think I can begin to sum up. Okay. This case involves a criminal alien who voluntarily left the United States and who was deportable because of a drug trafficking crime, which bars this court's jurisdiction under IRERA 309C4G. As a result, the court should dismiss the petition for review. Thank you very much. Thank you. Mr. Montoya, you have a couple of minutes for rebuttal. I would just like to bring out the point that Mr. Gabriel Pais, the underlying criminal offense, had already spent five years in incarceration in a state prison when having to bingo and defend his immigration status. After five years away from his family and his three boys, Mr. Gabriel Pais wanted to be reunited with them. Now, we look at that scenario and look at the situation we find ourselves in December of 2000, where Mr. Gabriel Pais thinks he has, and he's relied on his prior counsel's legal advice that he's not deportable as a result of accepting the state's plea agreement. And if we look at the record, there's nothing in the record that indicates that Mr. Gabriel Pais was ever told of the possibility of being deported in the underlying plea agreement. And if we look at the actual alien criminal notification that was provided to INS at the time, there is nothing in that record either that indicates that Mr. Gabriel Pais was going to be deportable. He relies on his then-counsel's advice and accepts a plea agreement thinking that he is going to be 212C eligible. He goes to court, and he's told, you know what, you don't even have a chance to present any witnesses or exhibits. We're just going to categorically deny you. That's why there's no record in the underlying immigration court to show that he wanted to place a defense and wanted to present testimony and witnesses. And there's nothing in the government's record or in the immigration's record that indicates that, in fact, anything of that nature was there because there is no record. Kennedy. Do you have anything before us that has ineffectiveness of counsel? Well, Judge, there's another little scenario that happens in this case that, unfortunately, we were trying to get the recordings of this particular hearing, and not until sometime after the BIA appeal were we able to obtain them to try to submit to this court, and unfortunately we're unable to. But there exists nothing in the record other than the presence of myself being there at the time of the hearing to state the fact that we made the record that we wanted to appeal. We felt that the court was wrong at the time, and we were not allowed to even present an affidavit by his former attorney, which was part of our actual petition to the court that Mr. Estrada had advised Mr. Gabriel Pais that he was not going to be deported for having accepted the state's plea at the time. So, you know, we have an argument real quick. We have an argument here where the government says, well, you know, he waived his right because he left. He knew he was advised by counsel, but at the same time we have an illegality committed, not by Mr. Pais Perez in the deportation proceeding, but by the government. Now the government wants to make the argument now also that you waived your right by leaving. They can't have it both ways. They can't have an illegal deportation and then at the same time argue that he waived his right by leaving. I think there's some unfairness in that scenario. Thank you, counsel. The case is submitted.
judges: Hall, Graber, Weiner